THOMAS BEAL

*v.*

GEORGE C. HARRINGTON *et al.*

*Filed at Ottawa January 25, 1886.*

1.   VENDOR'S LIEN—*principle on which lien rests.*   The principle governing courts of equity in the enforcement of liens, is the implied agreement held to exist between the vendor and vendee that the former shall hold a lien on the lands sold, for the payment of the purchase price, on the ground that the person who has the estate ought not, in conscience, as between them, keep it and not pay the purchase money.

2.   SAME—*waiver by taking other security.*   If a vendor of real estate takes collateral and independent security for the purchase money, he thereby releases and waives all right to a vendor's lien.

3.   SAME—*what to be regarded as collateral security—and herein, who to be considered the real purchaser.*   A person purchased a tract of land for himself, for which he agreed to pay by a stock of goods valued at $4000 and the conveyance of town lots valued at $1000, and had the land so purchased by him conveyed to his two sons in trust for himself, they paying nothing, and delivered the goods, but was unable to convey the lots for want of title thereto.   The sons afterward, at the father's request, conveyed the land to a third person, who paid nothing therefor, but held the title for the father:   *Held,* that the vendor of the land had a vendor's lien upon the lands conveyed by him, to the extent of $1000, the amount of the unpaid purchase money, which he might enforce as against the sons and their voluntary grantee.

4.   If land is bought by one as the agent of another, and a conveyance is made to the principal, the real purchaser, and the vendor accepts the obligation of the agent for the unpaid purchase money, he will waive his lien as vendor.   But this rule has no application to a case where the purchase is made by a party for himself, and the deed is made to one in trust for his use.   In such case he is the real purchaser, and his obligation to pay for the same is not collateral security.

5.   Where the equitable owner of land, the legal title being in another, sells the same, and procures a conveyance from the holder of the legal title to be made to a third person in trust for the purchaser, a court of equity will regard the equitable owner as the vendor, and he may enforce a vendor's lien for the unpaid purchase money against the land so conveyed.   In such case the person for whose use the land is conveyed will be held to be the real purchaser.

8—116 ILL.

6. SAME—*as against mere volunteers and purchasers with notice.* A conveyance of land by the purchaser to a third person, with notice of the existence of a vendor's lien, or to a mere volunteer, will not defeat the enforcement of the lien.

7. APPEARANCE—*record showing there was a demurrer—presumption as to all the defendants.* Where the record shows that the defendants in a bill in chancery not served with process, filed a demurrer to the bill, which is not set out in the record, it will be presumed that all the defendants joined in the demurrer, and thereby entered their appearance.

8. ASSIGNMENT OF ERROR—*as to matters not affecting the party complaining.* Where only one of several defendants appeals from a decree, he can not assign for error matters appearing in the record relating in nowise to himself, but to the other defendants, and which do not affect his rights; and the defendants not joining in the appeal can not assign errors in respect to themselves.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding.

On the 15th day of March, 1878, Thomas Beal claimed and represented to appellees that he was the owner of certain lots in Castle's addition to the village of Wyoming, Stark county, Illinois, and also of a stock of goods then in a store occupied by him. At that time the complainants (appellees) were the owners of certain real estate, although the legal title was in one Edward B. Hurlbut. Thomas Beal induced appellees to enter into a contract with him, whereby said Beal agreed to sell and deliver said stock of goods and convey said village lots in Wyoming to appellees in fee, clear of incumbrance. The trade was consummated,—the price of the goods as agreed upon was $4000, and the village lots $1000. In consideration of the sale and conveyance of said lots and stock of goods, appellees agreed with said Thomas Beal to cause to be conveyed to Alsina and Frederick Beal, sons of Thomas Beal, the said lands owned by appellees, the legal title of which was in said Hurlbut, subject to an incumbrance of $2400. The appellees reserved the right to pay off and remove all

other incumbrances on said land within four months, which they in fact did. Appellees, in pursuance of said contract, caused a deed for the real estate so vested in said Hurlbut to be executed by said Hurlbut to said Alsina and Frederick Beal, and delivered to Thomas Beal. The stock of goods was duly delivered to appellees, but the lots in Wyoming were not conveyed to appellees, said Thomas Beal at the time of the contract, or since, not being the owner or having any interest therein, and at no time since the contract has it been in his power to convey the title. Immediately upon the delivery of the deed from Hurlbut, Thomas Beal went into possession of the land thereby conveyed, and has had ever since the full and absolute control of said land; and on the 1st day of January, 1878, said Alsina and Frederick Beal, at the request of said Thomas Beal, conveyed said real estate to one L. M. Johnson, for the purpose of enabling said Thomas Beal to borrow money thereon to pay his debts. Johnson paid nothing for such conveyance, and neither he nor the said Alsina or Frederick ever had any interest in said real estate, but the title was at all times held by them in trust for Thomas Beal. Alsina and Frederick were young men, clerks in their father's store, without means, and the title to the real estate was placed in them, as said Thomas alleged, to enable him to settle with his creditors.

Appellees filed a bill setting forth the above facts, and making Thomas Beal, Alsina Beal, Frederick Beal and Lyman M. Johnson, defendants, and praying to have a vendor's lien enforced to the extent of $1000, the stipulated price of said village lots, against the lands so conveyed to said Alsina and Frederick for said Thomas Beal. On the same day a summons issued, returnable to the first Monday in February, 1879. On the 24th day of December, 1878, the summons was duly returned served on Johnson, but not found as to the other defendants. There appears in the record at the February special term, A. D. 1882, of the circuit court of Iroquois

county, wherein said cause was pending, the following: "And now come the *defendants*, by Robert Doyle, their attorney, and file a demurrer to the bill of complaint in this cause." This demurrer, which appears by the record to have been sustained, is not set out in the record here filed. On March 5, 1884, the following entry appears in said circuit court record: "And now comes the complainants, by J. W. Holland, their solicitor, and the defendants, by Robert Doyle, *their* solicitor, and the demurrer to the bill heretofore filed herein coming on to be heard, and the court being fully advised in relation thereto, ordered that the said demurrer be sustained; whereupon, on motion of the complainants' solicitor, leave is given to amend the bill by to-morrow morning." On the 28th day of March, 1884, Alsina Beal and L. M. Johnson filed their demurrer to the amended bill, which was overruled by the court, and they electing to abide by their demurrer, the bill was taken as confessed against all the defendants, and a decree rendered granting the relief prayed for. From that decree the defendants prayed, and were allowed, an appeal to the Appellate Court, but Thomas Beal alone perfected the appeal. The decree of the circuit court was affirmed in the Appellate Court, and appellant, Thomas Beal, now brings the record here and asks a reversal of the judgment of the Appellate Court. Errors are assigned by Thomas Beal, Frederick Beal and Alsina Beal, whilst Thomas Beal is the sole appellant, Frederick and Alsina Beal not having perfected their appeal.

Messrs. DOYLE, MORRIS & PIERSON, for the appellant:

Complainants could not have a vendor's lien, because the legal title was never in them. *Bayley* v. *Greenleaf*, 7 Wheat. 51; *Briscoe* v. *Burrough*, 1 Tex. 326.

If the holder of the legal title, the lien is waived, because the agreement was to convey the title to the sons of Thomas Beal, for the purpose of keeping the legal title out of him to

avoid his creditors until he could settle with them, showing clearly that complainants relied on the agreement of Thomas, the father, to convey the lots. They knew they were relying on the obligation of a person other than the grantees in the deed, for the delivery of the goods and the conveyance of the lots, and thus it becomes an independent security and waives the lien. *Andrus* v. *Coleman,* 82 Ill. 26; *Ilett* v. *Collins,* 103 id. 77; *Moshier* v. *Meek,* 80 id. 81; *Wilson* v. *Sawyer,* 74 id. 473.

No lien will be allowed when the party manifests a disposition or so acts as to show that he does not rely thereon, as, for instance, making a conveyance to a third person for the purpose of the vendee borrowing money, as is the case here. *Clower* v. *Rawlings,* 9 S. & M. 122; *Moshier* v. *Meek,* 80 Ill. 81.

An independent security, such as a deposit of stock, a pledge of goods, a mortgage on real or personal property, or the responsibility of a third person in any way, will be a waiver. *Conover* v. *Warren,* 1 Gilm. 498; *Boynton* v. *Champlin,* 42 Ill. 65.

If a third person covenant to pay a part of the purchase money to a person other than the vendor, such other person has no lien on the land for such part of the purchase money. *Clarke* v. *Royle,* 3 Sim. 499; *Foster* v. *Blackstone,* 1 Myl. & K. 297; *Colyear* v. *Mulgrau,* 2 Keene, 81; Story's Eq. Jur. sec. 1227.

Mr. R. W. HILSCHER, for the appellees:

A vendor's lien is given in equity on the ground that a person who has gotten the estate of another, ought not, in conscience, as between them, to be allowed to keep it and not to pay the full amount of the consideration money. 2 Story's Eq. Jur. secs. 1219–1225.

In the absence of proof to the contrary, it is supposed the vendor of lands does not intend unconditionally to part with them without security for the payment of the purchase money.

This lien attaches whether the vendor is cognizant of it or not. *Moshier* v. *Meek*, 80 Ill. 80.

It was not necessary that the legal title of record should have stood in the vendor. It is enough that he owned and controlled it, and made the contract for its sale. Equity looks at the substance, and not form. *Jeneson* v. *Jeneson*, 66 Ill. 259; 3 Russ. Ch. 488; 3 McCrary's C. C. 489.

The two sons and their grantor having paid nothing, they are not protected. *Wilson* v. *Lyons*, 51 Ill. 169; 2 Story's Eq. Jur. sec. 1225.

A vendor's lien is not waived by relying on the vendee to do that for which the vendor agrees to part with his land. In order to constitute a waiver of such a lien, there must be an actual taking of distinct and independent security. 51 Ill. 169.

Even the taking of a bond or a note of the vendee for the unpaid balance of the purchase money, does not waive the lien. *Boynton* v. *Champlin*, 42 Ill. 57; *Richard* v. *Lanning*, 27 id. 134.

So strong is the presumption that the lien exists as against the grantee and persons claiming under him as volunteers, that it must clearly appear that it has been waived. 51 Ill. 169; 2 Story's Eq. Jur. secs. 1224, 1225.

Alsina and Frederick Beal are not in this court complaining about the decree. They do not appeal, and Thomas Beal can not be heard to complain that a decree was passed against them also, when it should have been against him alone. *Wright* v. *Bishop*, 88 Ill. 302; *Havighorst* v. *Lindberg*, 67 id. 463; *Robinson* v. *Brown*, 82 id. 280; *Walker* v. *Abt*, 83 id. 226; *Stone* v. *Wood*, 85 id. 603.

A party can not complain of an error which in nowise injures or impairs his rights. *Myers* v. *Pheiffer*, 50 Ill. 485; *Smith* v. *Hickman*, 68 id. 315; *Worden* v. *Crist*, 106 id. 333.

The only instance where a defendant may assign errors committed against a co-defendant, is where the error affects

the rights of the defendant appealing. *Greenman* v. *Harvey,* 53 Ill. 386.

The two sons are not in court, and can not assign errors. A defendant who does not join in an appeal, can not have the benefit of it. *Enos* v. *Capps,* 12 Ill. 255; *Rees* v. *Chicago,* 38 id. 332; 1 Barb. Ch. 395.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The first error assigned is, that the court erred in overruling the demurrer to the amended bill. This raises the same questions, practically, as the fourth assignment of error, and will be considered in connection therewith.

The second error assigned is, that the circuit court erred in rendering a money decree against Frederick and Alsina Beal. A sufficient answer to this objection is, that they are not before this court, and can not assign errors for themselves; and even if it be conceded that the decree is erroneous in the respect urged, it is in no way prejudicial to the appellant, and he can not assign for error matters appearing in the record relating in nowise to himself, but to other defendants, and which do not affect his rights. *Fonville* v. *Sausser,* 73 Ill. 451; *Walker* v. *Abt,* 83 id. 226; *Kennedy* v. *Kennedy,* 66 id. 190; *Greenman* v. *Harvey,* 53 id. 386; *Havighorst* v. *Lindberg,* 67 id. 463; *Morse* v. *Smith,* 83 id. 396; *Smith* v. *Hickman,* 68 id. 314.

The third assignment of error is, that the circuit court had no jurisdiction of the person of Thomas Beal. As we have seen, the summons was returned not served as to Thomas Beal, but it is recited in the record that the *defendants* interposed a demurrer to the original bill, which was sustained, and leave given complainants to amend. It is also recited that the *defendants*, by *their* attorney, came, etc., upon consideration of the demurrer. This demurrer, as already said, is not set out in the record, so that we can see whether all

the defendants joined in it or not. The record is brought into the Appellate Court and this court by the appellant, Thomas Beal, and he has seen fit to rest the case upon the recitals in the record of the circuit court. No suggestion of a diminution of the record is made, or an attempt to supply the demurrer, which, if produced, would at once show whether he joined in it or not. We think that where the record of the circuit court contains recitals that certain papers were filed by the *defendants*, and one of the defendants brings the case to this court without incorporating in the record the papers so purporting by the recitals to have been filed by him, the presumption should be indulged that the paper, if produced, would sustain the recitals in the record. There is no hardship in this rule. We therefore hold that the recitals in this record are sufficient to show an appearance of all the defendants.

The fourth and last error assigned is, that the bill failed to show such a state of facts as entitled complainants to a decree for a vendor's lien. This presents the same question as the first assignment, and is the real matter of controversy in the case.

It is contended by counsel for appellant, that when a vendor of real estate takes collateral and independent security for the purchase money, he thereby releases or waives all right to a vendor's lien, and numerous authorities are cited to support the position. This principle is undoubtedly correct, and if it is applicable here, is conclusive of the case. But does it apply to the facts of this case? What collateral or independent security did the vendors take? It is claimed that they conveyed, or caused to be conveyed, to Alsina and Frederick Beal, the land against which a vendor's lien is now claimed, and took the promise of Thomas Beal to convey other property to them in payment therefor, and that amounted to a collateral security, or a security independent of the land conveyed, and, therefore, a waiver of their vendor's lien.

This is a misapprehension of the fact. The sale was made to Thomas Beal for a certain consideration, $1000 of which was to be paid by the conveyance of the lots in the village of Wyoming. When the deed was made, it was to his two sons, by his direction and for his convenience, but delivered to him, on his obligation to pay for the same according to the contract, by delivering the stock of goods and conveying said village lots. The sons took the title simply in trust for their father, and as mere volunteers, having no pecuniary or personal interest therein.

It is said by appellant's counsel, that the case of *Andrus* v. *Coleman,* 82 Ill. 26, is a parallel case with this. We think there is a marked distinction between this case and that one, as well as all other cases cited by appellant's counsel. In that case, Andrus conveyed to Martha J. Coleman the land and took her husband's deed of conveyance for certain lands, in Kansas, and his note for the balance of the purchase price of the land sold the wife. The court, in passing upon that case, say: "We consider that appellant, having conveyed to appellee, is estopped from questioning her title. He did this knowingly and voluntarily, and it is too late now to say that the title, in fact, belonged to her husband, with whom he .contracted. This is ample recognition of his knowledge of the husband being *the agent for the wife in the transaction, as she swears he was;* and, therefore, when he accepted his covenant of warranty for the Kansas lands, and his individual note for the residue of the purchase money, he knew that he was relying on the obligation of a person other than his grantee for the payment of the purchase money." In this case, the sale was made to Thomas Beal by appellees. The relation of purchaser and seller existed between them, and them alone. True, the deed was made to the sons of Thomas, but it is not claimed or pretended that they were purchasers in fact, or claimed to have any interest in the land or participated in the transaction in any way, except to receive the

title in trust for their father.   Nor is it shown or pretended that the vendors (appellees) claimed that any person other than Thomas Beal became liable to them for any portion of the purchase price of the land.   It will be conceded that as between Thomas Beal and his sons, he was the equitable owner of the land conveyed by Hurlbut.

It is also contended that appellees can not enforce a vendor's lien, because the legal title was in Hurlbut, and the conveyance made from him to the grantees in the deed.   Hurlbut was not the vendor or seller.   As we have seen, appellees were the owners, in fact, of the land,—were, in fact, the vendors to Thomas Beal, and the conveyance by Hurlbut was made by him on their order and request, and to prevent the necessity of a conveyance to them, and from them to appellant or his sons.   It is a familiar rule that equity disregards mere forms, and looks to the substance in the application of equitable principles, and this is especially so in the enforcement of vendor's liens.

In *Carey* v. *Boyles et al.* 53 Wis. 574, it was held, where A purchased a tract of land for B, taking the deed to B, who agreed to repay A the purchase price, that, in equity, A and B stood in the relation of vendor and purchaser, and the former had a vendor's lien for the unpaid purchase money. In this case, if the real parties chose to consummate the trade by taking a deed directly from Hurlbut, and to sons of the purchaser, it should not follow that the equitable right to enforce the vendor's lien is thereby lost.   The principle that will govern courts of equity in the enforcement of vendors' liens, is the implied agreement held to exist between the vendor and vendee that the former shall hold a lien on the lands sold, for the payment of the purchase price, on the ground that a person who has the estate of another ought not, in conscience, as between them, keep it and not pay the purchase money.   (2 Story's Eq. Jur. secs. 1219–1224.)   Usually lien is given to the grantor in the deed who is the vendor as

well, but, as we have said, the substance is to be regarded, and the useless form of a conveyance by Hurlbut to appellees, that they might convey to appellant, will not be necessary to preserve, in equity, the right to enforce this lien. If Hurlbut had conveyed to appellees, and they to appellant, under this contract, and appellant, even for consideration, had conveyed to his sons, with notice, and they to Johnson, with notice of appellees' rights, can it be questioned that the right to enforce the lien would exist? Here appellees were the equitable owners of the land, controlled the legal title, caused the ·conveyance to be made, and are entitled to the purchase money, and we can conceive of no principle of equity that will defeat their right to enforce a lien therefor against this land in the hands of mere volunteers, in whose hands the land, for all equitable purposes and considerations, must be treated as belonging to Thomas Beal. Neither appellant nor appellees are strangers or third parties to this transaction. *Loomis et al.* v. *Davenport and St. Paul Railroad Co.* 3 McCrary, U. S. Ct. Court, 489; *Austin* v. *Underwood,* 37 Ill. 438; *Magee* v. *Magee,* 51 id. 500; *Carey* v. *Boyles, supra.*

We are of opinion that a vendor's lien existed in favor of appellees for the price of the lots agreed to be conveyed by appellant as part of the consideration for the sale of the land to him, and that there has been no waiver of it. We think the conclusion reached is fully sustained by authority, as well as the reason of the rule.

Finding no error in this record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

The record in this cause was originally assigned to Mr. Justice DICKEY, and no opinion having been prepared by him, it was re-assigned in November, 1885.