## George W. Huffer, Appellee, v. Thomas S. Crago and Thomas S. Crago, Trustee, Appellants.

1. BROKERS, § 69*—*when ·person procuring mining rights not entitled to lien for commission.* In an action to recover commissions for procuring mining rights, where it appeared that the plaintiff procured options on land for the defendant, the right of action of the plaintiff was at law for ·a money judgment for his services or commissions, and such plaintiff could not claim a vendor's lien even if he owned options on the lands involved in his own name.

2. CONTRACTS, § 47*—*what is an option.* An option is a contract by which an owner of land agrees with another person that he shall have the right to buy his property at a fixed price within a certain time.

3. BROKERS, § 70*—*form of action for recovery of commission.* An action to recover commissions for procuring mining rights should be brought at law, there being no showing why such action, both as to manner and final relief, would not be as efficient and adequate as an action at equity.

4. BROKERS, § 69*—*when decree for sale of property erroneous in action for commission.* In an action to recover commissions for procuring mining rights, a decree entitling the plaintiff to a lien for the amount of his judgment and decreeing a sale of the mining property procured if the judgment was not paid within 30 days, was erroneous, there being no right to a lien.

Appeal from the Circuit Court of Fayette county; the Hon. WILLIAM B. WRIGHT, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded. Opinion filed March 25, 1920.

F. M. GUINN and EARL J. MAJOR, for appellants.

WHITAKER, WARD & PUGH, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

As appellee has set forth in his amended bill the facts upon which he bases his right to recover in this

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

case, we have thought best to copy the greater part of the same. Omitting the formal parts, the bill alleges that appellee "in October, 1913, and long prior thereto was engaged in the business of procuring coal underlying the surface in Fayette and adjoining counties and also in procuring the right to mine said coal and the right to conduct mining operations under such land; and being so engaged in such business the defendant, Thomas S. Crago, who resides in the State of Pennsylvania, being desirous of procuring mining and coal lands in said county, by and through the agents and attorneys for said Thomas S. Crago, made arrangements with your orator for the procuring of said coal and mining rights; that in and by said arrangements it was agreed and understood that the said Thomas S. Crago was to pay the sum of eight ($8.00) dollars per acre for coal underlying the real estate in Fayette and adjoining counties, together with the mining rights, of which five ($5.00) dollars per acre was to be paid to the owners of the land for deeds for said coal and mining rights and *the balance of three ($3.00) dollars per acre was to be paid your orator for procuring deeds from the owners of the land for said coal and mining rights therein; the said three ($3.00) dollars per acre to be paid to your orator for his service in procuring said coal and mining rights and such expenses as he might be compelled to pay.* And in accordance with such agreement and arrangements with the agents and attorneys of the said Thomas S. Crago, your orator did, in fact, purchase a large amount of coal and mining rights underlying the surface of the real estate hereinafter described and that by reason thereof large sums became due him from the said Thomas S. Crago; * * * that your orator procured good and valid deeds to said coal and mining rights as aforesaid in and to the above tracts of land and in accordance with aforesaid agreement and arrangements the said deeds were delivered to the said

Thomas S. Crago by and through his agent and attorney and now appear of record in the recorder's office in Fayette county, Illinois, and in the recorder's office of Shelby county, Illinois; that the procuring of said coal and mining rights by your orator for the said Thomas S. Crago covered a period from October, 1913, to June, 1917; * * * *that said Thomas S. Crago after having paid a portion of the commission due your orator* finally requested that your orator, thereafter, use all the money that he received as aforesaid from the said Thomas S. Crago to pay the five ($5.00) dollars per acre to the owners of the various tracts of land and that later on the balance of three ($3.00) dollars per acre for services to your orator would be paid, giving as a reason that the said Thomas S. Crago was anxious to purchase as much coal and mining rights under the land as possible and as speedily as possible; and that relying upon such statements your orator continued to purchase said coal and mining rights and paying out all the money he received at the rate of five ($5.00) dollars per acre therefor, keeping none of said money for his services and commission. * * * Your orator further represents that neither at the time of the execution and delivery of said deeds as aforesaid, or at any time since, has your orator received any security of any kind, nature or description for the sum of money due him as aforesaid, or for any part thereof although the same is now due and unpaid to your orator; that after allowing to said Thomas S. Crago, as aforesaid all deductions, set-offs of whatsoever nature at the rate of three ($3.00) dollars per acre, for the above described lands there is due your orator the sum of $6,318.82 and interest thereon from the time it became due making a sum due your orator of more than $8,000. * * * Your orator further represents that at the time the deeds, as aforesaid, were delivered to your orator they were delivered with the express understanding and statement of your

orator that he was not delivering said deeds in such a way as to be a full and complete delivery but was delivering them upon condition that his commissions, as *hereinbefore mentioned, were to be fully paid and that such delivery would not be considered as full and complete until the payment of said commissions,* and said deeds were accepted by the said Thomas S. Crago fully understanding and agreeing to such arrangement. Your orator further represents that by reason of the foregoing facts your orator became and is entitled in equity to a lien on all the coal and mining rights and at the rate as above described for the balance of money due to your orator as aforesaid.''

Then follows a prayer for an accounting and a decree for the payment of the sum found due within a short time and for a sale of the premises in case of default in payment. Appellants filed a lengthy answer in the nature of a demurrer and answer, which need not be set out for the purposes of this opinion.

It appears from the proofs that appellee did secure deeds as alleged, running from the owners of lands described, to appellants, conveying the coal and the right to mine the same beneath lands described in the bill. The owners of the land were paid $5 per acre, and appellee received $3 per acre. Most of the deeds ran to appellant individually, but some of them ran to him as trustee. It seems appellant did not acquire any of the lands for his own use, but for the benefit of a group of promoters or speculators, who in turn sold the mining rights thus acquired to other persons who were investors. When such coal rights were so sold, appellant would issue to his purchaser a certificate that he held, as trustee for such purchaser, the mining rights in whatever number of acres had been purchased. The money resulting from such resale was then used to purchase other mining rights. Appellee turned over all deeds to Judge Amos Miller, an attor-

ney of Hillsboro, Illinois, who examined the abstracts and filed the deeds for record. All money was furnished by appellant to Judge Miller, who usually paid the owners of the land, but sometimes money was turned over to appellee to pay the owners. For a time appellee received his $3 per acre as the deeds were delivered, but finally, as stated in the bill, all the money was used to purchase coal rights and appellee was to be paid later. He was, however, never paid for procuring these rights, and it is to recover this unpaid portion appellee has sued. It seems that at one time the promoters had sold more acres than appellee had secured deeds for, so he refunded $1,018.50 he had been paid, that it might be used in purchasing other lands. The court found that appellant owed appellee, including interest, the sum of $7,457.45, and that he was entitled to a lien on all the lands described in the bill for that amount. The decree directed payment of said sum within 30 days and ordered the lands sold in case of the default of such payment.

It is to be noted that there is no allegation whatsoever in the bill that appellee was the owner of the coal rights involved, or that the money sought to be recovered was a part of the purchase price. On the contrary, the theory of the bill very obviously is that appellee was to receive a "commission" of $3 per acre for procuring the mining rights. In fact, portions of the bill relating to the services to be performed by appellee expressly so state. Appellee now seeks to sustain the lien decreed him by the court upon the theory that the $3 per acre due him was a part of the purchase price, for which he is entitled to a vendor's lien, because he owned options on most of the coal rights at the time he entered into his claimed agreement or arrangement with appellant's agent or attorney. The whole record shows, as in fact the bill alleges, that appellee was working only for a commission

of $3 per acre for the coal rights procured by him.  The evidence does not clearly show with whom appellee had an agreement concerning these rights, but it does fail to show that he had any contract by which he, himself, was to sell appellant any mining rights.  If he has any right of action against appellant it is for a money judgment for his services or his commissions.  No reason appears from the record why an action at law to recover for his services or commissions, both in respect to the final relief and the mode of obtaining it, will not be as efficient and adequate as an action in equity, and he should therefore have brought his action on the law side of the court.  Even if appellee had owned options in his own name on the coal rights in all the lands, he would not be entitled to a vendor's lien.  In support of his contention that he is entitled to such a lien, appellee relies upon *Beal v. Harrington,* 116 Ill. 113.  In that case, however, the parties who were claiming the lien were in fact the owners of the land, while the party making the deed held only the legal title.  It cannot be said that the owner of an option is the owner of the land.  ''An option is defined to be 'a right acquired by contract to accept or reject a present offer within a limited or reasonable time in the future.'  (Am. & Eng. Encyc., 2nd Ed., 924.)  'An option is a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time.  He does not sell his land.  He does not then agree to sell it; but he does sell something, viz.: the right or privilege to buy at the election or option of the other party.'  *   *   * (*Ide v. Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17.)'' *Raddle v. Lindemann,* 151 Ill. App. 441.

In the case at bar the parties making the deeds were the owners of both the land and the legal title.  Appellee was not the owner of either under his options, but was only the owner of the right to buy the title.  As appellee was not entitled to the lien given him the

decree is reversed and the cause remanded for such further procedure as may be consistent with the views herein expressed.

*Reversed and remanded.*